770 S.E.2d 192

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**In the Interests of Sidney PATTEN, a vulnerable adult, Appellant.**

Appellate Case No. 2014–001394.
No. 5305.

Court of Appeals of South Carolina.

Heard Feb. 3, 2015.
Decided March 25, 2015.

94

Melinda Inman Butler, of The Butler Law Firm, of Union, for Appellant.

David E. Simpson, of the South Carolina Department of Social Services, of Rock Hill, for Respondent.

Ernest M. Spong, III, of Winnsboro, Guardian Ad Litem.

KONDUROS, J.

Sidney Patten appeals the family court's order finding him a vulnerable adult under the Omnibus Adult Protection Act, sections 43–35–5 to –595 of the South Carolina Code (2015 & Supp.2014) (the Act). We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

At the time of his hearing, Patten was sixty-three years old and in reasonably good physical health. The record reflects he moved slowly, took blood pressure medication, used eye drops, and may have taken medication for anxiety. Patten came to the Department of Social Services' (DSS) attention in Rock Hill based on allegations relating to his living conditions and reports he was dirty and had called 911 numerous times claiming persons were damaging his home or property.[1] According to the record, Patten was living in a home with no running water or electricity and cluttered with various items. Although the record contains little direct information about the exterior of the house, it appears the yard contained an extensive amount of debris and clutter as well. Additionally, the kitchen ceiling had a hole in it from a kitchen fire at some point in the past.[2] Martha Jones was assigned as Patten's DSS caseworker and testified at the final hearing. According to Jones, when she visited Patten in his home in December, she did not think his condition or living conditions warranted his being placed in protective custody although the situation was not ideal. Jones returned to the home in January and observed Patten had not made any changes to his living conditions.

1. The record contains no evidence regarding the alleged 911 calls or whether others were damaging Patten's home or property.

2. The size and severity of the "hole" is unclear from the record other than a social worker's testimony you could see light through it.

Simultaneously with the DSS investigation, Patten was involved with the City of Rock Hill's Environmental Court.[3] Patten indicated he had not corrected issues with the house because he did not have the money to make the required repairs to get a city permit and have water and electrical services restored. Patten received $782 per month in social security disability. He did not pay to live in the home as it was apparently family property belonging to him and other relatives who make no claim to the dilapidated residence.

Patten was using propane tanks at times to heat the home and warm food, and he had bottles of water and a bucket functioning as his bathroom. Floretta Anderson, a social worker with the Environmental Court, testified that the day she visited Patten, his home was freezing and she was concerned about the condition of the home. As a result, she alerted city authorities and persuaded Patten to go with the police to have his health evaluated. After an emergency hearing, the family court determined Patten was a vulnerable adult and should remain in DSS protective custody.

Jones continued seeing Patten once he was in DSS custody. She testified Patten had a psychological evaluation that was inconclusive. She also provided Patten was more stable at the time of the hearing than during some of their previous visits during which he was often upset about his placement in DSS custody. She further indicated Patten was capable of getting food and medicine and getting to where he needed to go.

Patten's testimony at the final hearing reflected he was not coherent on some subjects and got confused. He did not have a clear plan regarding where he would live if his home was condemned and had no specific plan on how to make the repairs required by the City.

The family court determined DSS presented "evidence of a non-medical nature which substantiates the vulnerability of Mr. Patten." The family court stated "[e]vidence was presented which showed that Mr. Patten is confused at times regarding his marital status, regarding his family members and regarding his abilities to correct his living situation on his own. His own testimony was at times confused and ram-

---

3. Environmental Court is a division of municipal court addressing owners' maintenance of their property.

bling." The order further indicates "[t]he evidence is clear that Mr. Patten, when allowed to attempt to provide for himself is unable to do so in a safe manner." Consequently, the family court ordered Patten to remain in DSS custody. This appeal followed.

**STANDARD OF REVIEW**

"In appeals from the family court, the appellate court reviews factual and legal issues de novo. *De novo* review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the [family] court's findings." *Doe v. S.C. Dep't of Soc. Servs.*, 407 S.C. 623, 632, 757 S.E.2d 712, 716–17 (2014) (alteration by court) (citation and internal quotation marks omitted). "However, we recognize this broad scope of review does not alter the fact that a family court is better able to make credibility determinations because it has the opportunity to observe the witnesses." *Id.* at 632, 757 S.E.2d at 717 (citation and internal quotation marks omitted).

**LAW/ANALYSIS**

Patten argues the family court erred in finding he was a vulnerable adult. We agree.

The recent case of *Doe v. South Carolina Department of Social Services*, 407 S.C. 623, 757 S.E.2d 712 (2014), controls the disposition of this case as it sets forth the requisite analysis for determining if someone is a vulnerable adult within the meaning of the Act.[4]

The Act defines a vulnerable adult as follows:

[A] person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection. This includes a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to, organic brain damage, advanced age, and physical, mental, or emotional dysfunction. A resident of a facility is a vulnerable adult.

S.C.Code Ann. § 43–35–10(11) (2015).

"By its clear terms, the infirmities of aging must 'substantially impair' the person's ability to adequately provide

---

4. We note the learned family court judge and trial counsel did not have the benefit of the *Doe* case as it was decided after Patten's hearing.

for his or her own care or protection." *Doe*, 407 S.C. at 634, 757 S.E.2d at 718. "[F]or a person to be deemed a vulnerable adult under the Act[,] the person's physical or mental condition, including advanced age, must cause a diminished ability to adequately provide for self-care or protection." *Id.* at 635, 757 S.E.2d at 718. "Without question, an involuntary removal under the Act deprives a person of his liberty as well as property if the court orders a vulnerable adult to pay for the care received while in the custody of DSS." *Id.* at 637, 757 S.E.2d at 719. "Accordingly, . . . a heightened standard of proof, i.e., clear and convincing evidence, is necessary under these circumstances." *Id.*

> [P]overty or the lack of adequate funds or resources may have a deleterious effect on an individual's ability to adequately provide for her care and protection; however, poverty alone is not sufficient to satisfy the definition of a vulnerable adult under the Act. Rather, there must be evidence of other factors that cause the deleterious effect.

*Id.* at 638 n. 16, 757 S.E.2d at 720 n. 16.

Doe was an eighty-six-year-old woman with a heart condition. *Id.* at 627, 757 S.E.2d at 714. She lived alone without family support. *Id.* Deputies who arrived to investigate an allegation regarding her living conditions observed the home was "in an unsanitary and deplorable condition." *Id.* at 627–28, 757 S.E.2d at 714. They noted a hole in the roof and a hose running from a neighbor's home to provide water. *Id.* at 628, 757 S.E.2d at 714. They observed "mold on the window curtains and piles of items on the floor giving the appearance that Doe was a 'hoarder.'" *Id.* After her removal, Doe was evaluated by Dr. Marc Harari, a licensed counseling psychologist. *Id.* at 629, 757 S.E.2d at 715. He concluded "Doe appeared to have 'the minimum levels of competency to function independently' as there was no evidence of dementia, severe emotional issues, or obvious physical limitations."[5] *Id.* at 630, 757 S.E.2d at 715. When asked about repairing her home, Doe testified the hole in the roof had been repaired and her water had been turned off over a disputed bill. *Id.* at 631,

---

5. Dr. Harari also recommended DSS maintain an open treatment case to ensure Doe's home was repaired and that she interact with peers to alleviate feelings of isolation. *Id.*

757 S.E.2d at 716. She indicated she had paid the bill and could request to have the water turned back on. *Id.* The family court concluded Doe met the statutory definition of a vulnerable adult under the Act.[6] *Id.* In reversing that decision, the supreme court focused on the lack of a causal relationship between Doe's living conditions and any mental or physical limitation.

> Significantly, counsel for DSS admitted the evidence was "scant" and there was only a "scintilla of evidence" to show that Doe qualified as a vulnerable adult under the terms of the Act. Furthermore, there is no evidence that Doe's advanced age substantially impaired her ability to adequately provide for her own care and protection. Specifically, there is no evidence of physical or mental infirmities that would prohibit Doe from living independently. To the contrary, the evaluating psychologist concluded Doe possessed a level of competency sufficient for her to function independently and she had no obvious physical limitations. Moreover, there is no evidence the unfavorable home condition that precipitated Doe's involuntary removal was causally related to her advanced age. Instead, the problems with Doe's home were dependent on the finances needed to repair the roof and turn on the water supply. Although there is some evidence that Doe's home was in disarray, DSS offered no evidence attributing the lack of cleanliness to a deficiency in Doe's mental or physical condition. Accordingly, we find the family court erred in classifying Doe as a vulnerable adult.

*Id.* at 638, 757 S.E.2d at 719–20 (footnote omitted).

 Using the framework set forth in *Doe,* we conclude DSS failed to prove by clear and convincing evidence Patten was a vulnerable adult under the Act. First, Patten's psychological evaluation was inconclusive and no information regarding the evaluation was presented to the family court or included in the record on appeal. Additionally, Patten had

---

**6.** The family court determined Doe would continue in DSS protective custody until (1) her water supply was reconnected; (2) the house was clean; (3) electrical power was supplied to the home; (4) the heating system was operational; (5) an air conditioning system, if in place, was operational; and (6) the house had adequate food and cleaning supplies. *Id.* at 631–32, 757 S.E.2d at 716.

been able to sustain himself in relatively good health in the home even though the home was not in a condition that most people would find suitable. The record demonstrates he eats well, including sometimes visiting the local soup kitchen; obtains his medications; attends a local church; and is generally able to get where he wants to go, either on foot or by other means. Therefore, we reverse the family court's determination Patten was a vulnerable adult.

We are mindful circumstances may have changed during the pendency of this appeal. Remand is needed, as in *Doe*, for DSS to inform the family court of the current status of Patten's health, home, and finances and to determine what additional community services he may be entitled to in light of his return to the community. The review hearing should be conducted in a manner consistent with this opinion and as expeditiously as possible so Patten does not spend any more time in custody than absolutely necessary.

**REVERSED AND REMANDED.**

THOMAS and GEATHERS, JJ., concur.